**MINNESOTA MINING & MAN-
UFACTURING COMPANY,
INC., Plaintiff,**

v.

**NIPPON CARBIDE INDUSTRIES
CO., INC., Defendant.**

**No. Civ. 4–94–222 (JRT/RLE).**

United States District Court,
D. Minnesota.

Jan. 13, 1997.

---

Deborah J. Palmer, Minneapolis, MN, for Minnesota Mining & Mfg. Co., Inc.

Louis L. Touton, Los Angelos, CA, for Nippon Carbide Industries Co., Inc.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of the Plaintiff Minnesota Mining and Manufacturing ("3M") to compel an inspection of the Defendant Nippon Carbide Industries' ("NCI's") manufacturing plant in Japan, and upon NCI's Motion to Stay all discovery until the District Court issues a decision on its pending Motion to Dismiss, or to Stay these proceedings on grounds of abstention and *forum non conveniens.*[1]

A Hearing on these Motions was conducted on January 6, 1997, at which time 3M appeared by Deborah J. Palmer, Esq., and NCI appeared by Louis L. Touton, Esq.

For reasons which follow, 3M's Motion is granted and NCI's Motion is denied.

### II. *Factual and Procedural Background*

In this action, 3M alleges that NCI breached a Settlement Agreement which the parties reached in 1992, and in which NCI agreed not to make, sell, or use retroreflective sheeting in violation of several unexpired foreign patents (the "McGrath Patents") that are held by 3M. As here pertinent, 3M contends that NCI is now, and has been, producing metal sheeting at its manufacturing plant, which is located in Tochigi Prefecture, Japan, in violation of the terms of their Agreement. NCI admits that it currently manufactures retroreflective sheeting at its facilities in Japan, but it denies that this sheeting infringes upon the McGrath Patents.

Shortly after this action was commenced in March of 1994, NCI moved to dismiss the Complaint on lack of jurisdiction, and on *forum non conveniens* grounds. On August 15, 1994, the District Court dismissed the Complaint on jurisdictional grounds, but declined to reach the *forum non conveniens* issue. On August 11, 1995, the Court of Appeals for the Eighth Circuit reversed the dismissal, found that the District Court had jurisdiction over NCI, and remanded the matter for further proceedings, including a determination of the *forum non conveniens* question. Thereafter, NCI renewed its Motion to Dismiss on *forum non conveniens* grounds, urging that a determination, as to whether a breach of the parties' Agreement had occurred, is necessarily conditioned upon a finding that NCI had infringed one or more of 3M's patents—a question that should be resolved in the Courts of those countries in which the patents were issued, and in which the sales had occurred. Not surprisingly, 3M opposes NCI's Motion to Dismiss, which was heard by the District Court on December 6, 1996, and which is currently under advisement.

On December 20, 1996, 3M renewed its previous Motion to Compel an inspection of

---

1. Originally, the Defendant had also moved for the entry of a Protective Order but, at the Hearing in this matter, the parties advised that the terms of the Protective Order had been negotiated to a resolution. As a result, if the terms of the proposed Order are acceptable to the Court, we will execute the same following our review.

NCI's manufacturing facility in Japan.[2] In response, NCI contends that all discovery in this matter should be stayed until a resolution of its Motion to Dismiss has been reached. Asserting that a plant inspection, which is not supervised by a Japanese Judge, is unlawful under Japanese law, NCI requests, at a minimum, that we stay the plant inspection in order to defer the procedure to a Japanese Court.

### III. *Discussion*

A. *Standard of Review.* 3M's Request for an Inspection arises in the context of Rule 34(a)(2), Federal Rules of Civil Procedure, which provides as follows:

> Any party may serve on any other party a request * * * to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Prior to 1970, a showing of "good cause" was a prerequisite of any discovery under this provision. As amended, however, a party's "request comes within the literal language of Rule 34(a)(2) if the proposed entry and inspection 'are within the scope of Rule 26(b).' " *Eirhart v. Libbey–Owens–Ford Co.,* 93 F.R.D. 370, 371 (N.D.Ill.1981); *Cuno Inc. v. Pall Corp.,* 116 F.R.D. 279, 281 (E.D.N.Y. 1987) ("Inspection is permitted, and indeed anticipated, by Rule 34(a), to be governed by the scope of Rule 26(b).") In turn, Rule 26(b)(1), Federal Rules of Civil Procedure, provides that the "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and, to be discoverable, "the information sought need not be admissible at the trial if the information sought appears reasonably calculated to the discovery of admissible evidence."

■ Notwithstanding the relevance of the proposed inspection, a challenge "may be made on any ground that would support an application for a protective order under Rule 26(c)." *8A Charles Alan Wright, Richard L. Marcus, Federal Practice and Procedure: Civil 2d* § 2213 at 428 (1994), citing *1970 Advisory Committee Note to Rule 34(b)* (referencing the Committee Notes to Rule 33(a), which reflect that a responding party "may choose to seek a protective order under new Rule 26(c)"). Rule 26(c), Federal Rules of Civil Procedure, expressly provides that, "for good cause shown," the Court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Where a responding party exercises it right under Rule 26(c), and objects to a Rule 34 inspection, the Court should balance the parties' conflicting interests. See, *Belcher v. Bassett Furniture Indus., Inc.,* 588 F.2d 904, 908 (4th Cir.1978) (where entry on land is sought, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection"); *1970 Advisory Committee Note to Rule 34(b)* ("an appraisal of 'undue' burden inevitably entails consideration of the party seeking discovery").

■ B. *Legal Analysis.* In effect, 3M requests the opportunity to inspect, observe, videotape, and photograph, NCI's Japanese production facilities, as well as permission to take samples of certain of the materials that are employed in the pertinent phases of NCI's production process. According to 3M, and NCI does not disagree, the McGrath Patents not only focus upon the process by which retroreflective sheeting is manufactured but, in describing the incremental changes which occur throughout the manufacturing process, the language of the Patents is qualitatively subjective. As but one illustration, 3M asserts that, absent the means of determining the phase of the process from which the specimen was obtained, the samples that have been previously provided by NCI have not been particularly helpful. In this respect, we agree with 3M that a plant inspection provides the most efficient and effective means for determining

---

**2.** Originally, 3M moved to compel an inspection of NCI's plant on May 8, 1996, but, assertedly, withdrew that Motion when it appeared that the parties would be able to resolve *the* issue without Court intervention. *Plaintiff's Memorandum in Support of Motion to Compel,* at p. 6 n. 5.

whether a patented process has been infringed. See, *National Dairy Products Corp. v. L.D. Schreiber & Co.,* 61 F.R.D. 581, 582–83 (E.D.Wis.1973) (in order to properly respond to the defendant's attempt to distinguish the parties' methods of operation, the plaintiff in a patent infringement suit has a "justifiable interest" in inspecting and testing the defendant's operations); *Dow Chemical Co. v. Monsanto,* 256 F.Supp. 315, 317–18 (S.D.Ohio 1966) (where infringement relates to a method of production, "no means of determining the methods * * * other than a visual inspection suggests itself").

Notably, in opposing the Motion, NCI does not dispute the advisability of the proposed inspection. Rather, NCI urges that an inspection is premature, and that a site visit would violate principles of international comity, would be unreasonably burdensome, and would likely divulge trade secrets. We conclude, however, that none of these objections bears merit.

■ As to timeliness, NCI contends that an Order, which compels an inspection of its premises prior to the District Court's ruling on its Motion to Dismiss, would be improper, since an inspection would be unnecessary if the Motion were to be granted. In turn, 3M asserts that an inspection will be necessary, irrespective of a ruling on the Motion to Dismiss, because the infringement issue, quite ineluctably, will be decided in one Court or another. See, e.g., *Wolf v. United States,* 157 F.R.D. 494, 495 (D.Kan.1994) (where decision on a legal issue will be heard regardless of the outcome of a pending motion, "there is no reason that discovery should not proceed"). Indeed, the parties have agreed that the discovery in this action may be used in the actions which are presently proceeding in the foreign forums. Accordingly, we find that an inspection is not dependent upon the District Court's resolution of NCI's Motion to Dismiss, and that 3M would be prejudiced by an indefinite stay in discovery, since six of 3M's seven unexpired McGrath Patents will lapse on February 16,

1997. Since the parties' Agreement precludes the infringement of "unexpired" patents, an inspection after February 16, 1997, would require 3M to prove that NCI's manufacturing process had not been modified during the period between the expiration of the Patents and the time of the inspection.

■ Next, NCI argues that the proposed inspection ignores principles of international comity which were recognized by the Supreme Court in *Societe Nationale Industrielle Aerospatiale v. United States District Court,* 482 U.S. 522, 546, 107 S.Ct. 2542, 2557, 96 L.Ed.2d 461 (1987), where the Court observed that "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."[3] Here, NCI advises that Japanese law would not permit the inspection, as it is presently formulated. According to Tenatsu Tanaka, who is a Japanese lawyer whose opinion is proffered by NCI, "[a]ny inspection of a plant within Japan in the course of a freign (sic) lawsuit that is not conducted under [Japanese law] is contrary to Japanese-law notions of Japanese judicial sovereignty and is unlawful." *Declaration of Tenatsu Tanaka,* at ¶ 23. In lieu of the proposed inspection, NCI has offered 3M an inspection of its plant, pursuant to Japanese law, in the context of a Japanese proceeding that is currently pending between the parties. *Id.* at ¶¶ 8–16.

Although we are keenly sensitive to the promotion of international comity, we cannot ignore the fact that NCI is properly within the jurisdiction of this Court, and therefore, is "subject to the same legal constraints, including the burdens associated with American judicial procedures, as their American competitors." *Societe Nationale Industrielle Aerospatiale v. United States District Court,* supra at 540 n. 25, 107 S.Ct. at 2553 n. 25. Similarly, while we appreciate NCI's offer to allow 3M to inspect its plant pursuant to Japanese procedures, NCI can offer no guar-

---

3. As defined by the Court, in *Societe Nationale Industrielle Aerospatiale v. United States District Court,* 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 2556 n. 27, 96 L.Ed.2d 461 (1987), comity "re-

fers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."

antee that the Japanese Courts will permit the inspection that 3M proposes, let alone that an inspection could be completed prior to February 16, 1997, when six of the seven McGrath Patents will expire. As related by 3M, and not controverted by NCI, under Japanese law, inspections are difficult to obtain, and are usually employed only in the latter stages of litigation. *Memorandum in Support of Motion to Compel,* at 9, citing Ohba, *"Overview of Differences Between the U.S. and Japan in Patent Litigation,"* ULPA Symposia, 1996, p. 6. More importantly, even if an inspection, that was supervised by the Japanese Courts, could be timely invoked, there is no certainty that a Japanese Court would allow 3M to inspect those aspects of NCI's process that are germane to the issues in this proceeding which are not involved in the action being pursued in Japan.

Moreover, we find it significant that, in *Societe Nationale* the Supreme Court did not direct American Courts to accede to the discovery procedures of foreign jurisdictions, even where a District Court was presented with a conflict between the employment of the Federal Rules of Discovery and the Hague Convention's Procedures on Taking Evidence Abroad. Instead, the Court held that a District Court has discretion to make reasonableness determinations, "based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." *Id.*

at 546, 107 S.Ct. at 2557. Given our substantial uncertainty that a resort to Japanese inspection procedures would prove effective, and our conviction that 3M will be prejudiced if an inspection is not undertaken before February 16 of this year, we conclude that 3M's inspection, as allowed by Rule 34, should now proceed. In making this determination, we are particularly mindful that the "on-the-spot" rulings of the Japanese Court, which are a primary reason for the Court's presence during the conduct of such an inspection, could well impair the legitimate purposes of the inspection, and could foster a direct conflict between our views of the discovery process, as enunciated by Rules 1 and 26, Federal Rules of Civil Procedure, and the scope of discovery authorized under Japanese law.[4]

■ The Defendant also argues that the proposed inspection threatens the disclosure of NCI's trade secrets, and introduces disruptive and expensive distractions to its production facility. However, we are persuaded that NCI's trade secrets will be properly preserved by the provisions of the Protective Order that the parties have negotiated. Of course, we recognize that any plant inspection will potentiate to disruption, but the parties are capable of minimizing any distraction through advance preparation, and any remaining prospect for disruption is outweighed by the efficiencies and effectiveness of a plant inspection in ferreting out patent

---

4. Since it has not been appreciably controverted, we do not overlook NCI's assertion that an inspection, which is conducted outside of the Japanese format, would be "unlawful," but we think the same may be said of any procedure that conflicts with a conventional application of the law—that is, if the inspection does not conform to the law, then it is "unlawful." Here, the principle concern that NCI harbors is that an inspection will breach trade secrets that have competitive and economic values to NCI. These interests will be preserved, to an extent wholly acceptable to NCI, by the terms of a Protective Order that is fully enforceable under the Federal Rules of Civil Procedure. Similarly, if the scope of the inspection should veer from that allowable under Rule 34, then NCI will have as ready an access to our Courts, as would be accessible under the Japanese procedure. In any event, we are persuaded that a divergence from the procedures available to 3M under Rule 34 would transgress a key precept of American discovery.

As the Court recognized, in *Societe Nationale Industrielle Aerospatiale v. United States District, Court,* supra at 540 n. 25, 107 S.Ct. at 2553 n. 25:

> [W]ithin any lawsuit between a national of the United States and a national of another contracting party, the foreign party could obtain discovery under the Federal Rules of Civil Procedure, while the domestic party would be required to resort first to the procedures of the [foreign state]. This imbalance would run counter to the fundamental maxim of discovery that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."

Here, the discovery that 3M requests is unquestionably available to NCI under the Federal Rules, and to unnecessarily burden 3M's access to that discovery, in terms of both time and expense, is not an acceptable alternative under the circumstances of this case.

infringement, if any there be. Cf., *Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 332–33 (D.Kan.1991) ("The mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought does not of itself require denial of the motion.").

Given the totality of the circumstances before us, inclusive of the international interests at play here, we are persuaded that an onerous burden will not be imposed if 3M's proposed inspection is allowed to proceed. Accordingly, we grant 3M's Motion to Compel.[5]

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motions to Compel an Inspection of the Defendant's Plant and Manufacturing Process [Docket No. 104], is GRANTED, and the parties are directed to "meet and confer" on the particulars of the inspection and, absent an amicable resolution, the parties are instructed to expeditiously refer any remaining disputes to this Court for resolution.

2. That the Defendant's Motion to Stay all discovery until the District Court issues a decision on its pending Motion to Dismiss [Docket No. 107] is DENIED.

---

**5.** We are mindful that NCI has specific objections to the particulars of the inspection that 3M proposes, but we think it proper to require the parties to exhaust their "meet and confer" obligations before we exercise our discretion in formulating the details of the plant tour. At the Hearing in this matter, NCI acknowledged that the differences in the parties' inspection procedures were, in all likelihood, amenable to an amicable resolution. If the parties' expectation has been unduly optimistic, then they are at liberty to jointly submit any remaining disputes for our expeditious resolution.

Lastly, beyond our conclusion that NCI's Motion to Dismiss should not stay 3M's proposed plant inspection, we direct that all other aspects of the parties' discovery should proceed without delay. In this respect, our conclusion is consistent with the prior Order of Magistrate Judge John M. Mason who, on February 15, 1996, rejected NCI's informal request to stay discovery pending a resolution of its Motion to Dismiss, and who issued a Scheduling Order that established a discovery cut-off date of March 3, 1997. See, *Plaintiff's Memorandum in Support of its Motion to Compel*, at p. 5.